UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

MARK DAVE HILL,                          )
                                         )
          Petitioner,                    )
                                         )          Civil No. 14-85-ART
v.                                       )
                                         )
MICHAEL SEPANEK, *Warden*,               )       **MEMORANDUM OPINION**
                                         )           **AND ORDER**
          Respondent.                    )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

     Federal habeas law is rather basic. A prisoner challenging the legality of his *sentence* must do so under 28 U.S.C. § 2255; a prisoner challenging the legality of his *detention* must do so under 28 U.S.C. § 2241. But from these roots a tangled forest has grown. Part of the confusion stems from the back door that Congress created between Sections 2255 and 2241: When Section 2255 "is inadequate or ineffective to test the legality of his detention," the prisoner may bring his challenge under Section 2241. 28 U.S.C. § 2255(e). The circuits are split on when Section 2255 is "inadequate or ineffective." Many require a petitioner to prove his "actual innocence" before invoking the savings clause and attacking his sentence under Section 2241. In this case, the Sixth Circuit went a different way.

     To this point, however, the debate has largely overlooked the practical problems a *district* court faces when it must provide Section 2255 relief via Section 2241. Logistically, how can a court that never sentenced a prisoner *re*sentence him? What power does it have to

do so?  Does Congress want it to use that power in that way?  Those are some of the questions here.

Mark Dave Hill challenges the sentencing enhancement he received for qualifying as a career offender.  The Court has been directed to hear that sentencing challenge under Section 2241 through the savings clause.  Before proceeding further, the Court would like to hear what the parties think the Court can—and should—do.  The issues are laid out below.

## I.   Background

In 2001, shortly after his trial began in the District of South Carolina, Hill pled guilty to conspiring to distribute heroin.  *See Hill v. Masters*, 836 F.3d 591, 592–94 (6th Cir. 2016) (recounting the facts).  The sentencing judge then needed to calculate Hill's guidelines range. The sentencing guidelines provide longer sentences for career offenders.  U.S. Sentencing Guidelines Manual (U.S.S.G.) § 4B1.1.  Hill qualified:  His most recent crime, "a controlled substance offense," followed "at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1(a).  Hill, who was on the Maryland books with a drug offense and a second-degree assault, had one of each.  With the enhancement, Hill had a criminal history category of VI and an offense level of thirty-five.  *Id.* § 4B1.1(b).  These coordinates landed him in a guidelines range of 292 to 365 months.  And back then, the guidelines were mandatory, meaning the court was required to sentence him somewhere within this range.  *See United States v. Booker*, 543 U.S. 220, 245 (2005) (holding, later, that the guidelines are advisory).  The court gave him 300 months.

A decade later, the law on the career-offender enhancement changed.  In *Descamps v. United States*, 133 S. Ct. 2276 (2013), the Supreme Court clarified when a prior felony is a

2

"violent" felony under the Armed Career Criminal Act (ACCA).  The ACCA, like the career-offender guideline, imposes stiffer penalties on defendants with prior violent offenses or serious drug crimes.  *See id.* at 2283–86.  Later that year, the Fourth Circuit held in light of *Descamps* that Maryland's second-degree-assault statute—the one Hill had once violated—did not describe a "violent felony" under the ACCA.  *See United States v. Royal*, 731 F.3d 333, 342 (4th Cir. 2013).

Hill filed a habeas petition, arguing that *Descamps* and *Royal* entitle him to a lower sentence.  R. 1.  The career-offender guidelines define "crime of violence" the same way that the ACCA defines "violent felony."  *Compare* 18 U.S.C. § 924(e)(2)(B)(i), *with* U.S.S.G. § 4B1.2(a)(1).  Knowing what we know now about Maryland's second-degree-assault law, Hill argues, he should not have been classified as a career offender—and if so, his mandatory range should have dropped to 235 to 292 months.  *See Hill*, 836 F.3d at 593.  Not only that: He might also have qualified for certain guideline amendments that could have moved his range as low as 188 to 235 months.  *Id.*

Usually, a federal habeas petitioner wishing to challenge his sentence must do so in his sentencing court through a motion under 28 U.S.C. § 2255.  But as discussed below—and because of the quirks that have grown from the habeas laws—Hill brought his petition under 28 U.S.C. § 2241 and in the district where he was confined.

### A.  The structure of Sections 2241 and 2255

There are generally two paths federal habeas petitioners can go by.  The first path is Section 2241, which lets them challenge the legality of their detention.  28 U.S.C. § 2241.  If a prisoner wants to contest "the execution or manner in which [his] sentence is served"—*i.e.*,

3

if the jail is withholding good-time credits—Section 2241 is his remedy. *Terell v. United States*, 564 F.3d 442, 447 (6th Cir. 2009). When the Great Writ issues under this section, it gets served on the petitioner's jailer; after all, he is the one who executes the sentence. *Id*. The petitioner must therefore file his 2241 motion in a court with jurisdiction over the jailer: the court for the district where the petitioner is confined.

The second path runs through Section 2255, which allows federal prisoners to challenge the validity of their convictions and sentences. *See* 28 U.S.C. § 2255. The remedy that they can obtain is "exactly commensurate" with what, before the days of Section 2255, they could have obtained through a habeas petition in the district of their confinement. *Hill v. United States*, 368 U.S. 424, 471 (1962). Why use Section 2255 instead of Section 2241? Section 2255 explicitly enables a petitioner to challenge the legality of the proceedings that led to his sentence, and it is in fact the *only* way to collaterally attack sentences. 28 U.S.C. § 2255(e). Petitioners may file such challenges *from* anywhere in the country, but *in* one court only: "the court which imposed the sentence." *Id*. § 2255(a). This jurisdiction is not only the one Congress happened to choose, but the one that makes the most sense. The jailer simply executes the sentence handed down by a judge. If the judge got that sentence wrong, he or she should fix it. And for reasons that are obvious to any judge who has sentenced before, the best judge to fix the sentence is the one intimately familiar with the defendant, the case, and local practices.

A federal prisoner gets one free chance to file a 2255 motion. If, after filing his first, he discovers some new evidence, or if the Supreme Court creates a new constitutional rule that applies retroactively to his case, he may bring a "second or successive" 2255 motion. *Id*.

4

§ 2255(h).  But when Section 2255 is "inadequate or ineffective to test the legality of his detention," a prisoner may bring his challenge under Section 2241 instead.  *Id.* § 2255(e). Although courts disagree about what this "savings clause" means, they generally agree that Section 2255 is not "inadequate or ineffective" just because a prisoner is procedurally barred from invoking it—the statute is not "self-cancelling."  *Brown v. Caraway*, 719 F.3d 583, 600 (7th Cir. 2013) (Easterbrook, J., statement concerning Circuit Rule 40(e) circulation); *see United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001) ("The unavailability of § 2255 relief does not alone establish inadequacy or ineffectiveness under the savings clause.  The court has clearly stated 'the § 2255 remedy is not considered inadequate or ineffective simply because . . . the petitioner is procedurally barred from pursuing relief under § 2255[.]'" (quoting *Charles v. Chandler*, 180 F.3d 753, 758 (6th Cir. 1999))).

Rather, courts have held that a prisoner may access the savings clause when he has been convicted under a law that later changes in a way that makes him "actually innocent" of the offense.  *See Wooten v. Cauley*, 677 F.3d 303, 307–08 (6th Cir. 2012).  To prove *that*, he must show that (1) a new interpretation of a statute, (2) issued too late for him to have incorporated it into his previous motion, (3) is retroactive, and (4) not only applies to his case but also makes it "more likely than not that no reasonable juror would have convicted" him of the offense.  *Id.* When all of that is true, he may challenge his conviction—not under Section 2255, but under Section 2241.  *Id.*

But until recently, prisoners could not use the savings clause to challenge sentencing *enhancements*.  As some courts have written, "[t]o say 'that a petitioner can be "actually innocent" of a sentencing enhancement,' rather than an element of the actual crime, 'would

5

require a great deal of both verbal and logical gymnastics.'" *United States v. Surratt*, 797 F.3d 240, 249 (4th Cir. 2015) (quoting *Turner v. Warden Coleman FCI (Medium)*, 709 F.3d 1328, 1334 n.3 (11th Cir. 2013)).  Whether or not that's true, until this case the Sixth Circuit had consistently held—albeit in unpublished cases—that the savings clause "does not apply to sentencing claims." *Reminsky v. United States*, 523 F. App'x 327, 329 (6th Cir. 2013); *see also, e.g.*, *Jones v. Castillo*, 489 F. App'x 864, 866 (6th Cir. 2012) (same); *Hayes v. Holland*, 473 F. App'x 501, 502 (6th Cir. 2012) (same).

### B. Hill's petition

After years of litigation, Hill's habeas claim had stalled.  He had already filed his free Section 2255 motion—plus one more—both of which were denied.  *See United States v. Hill*, 158 F. App'x 436, 437 (4th Cir. 2005) (denying Hill's first 2255 petition); *United States v. Hill*, 442 F. App'x 76, 77 (4th Cir. 2011) (denying his second 2255 petition).  No new rule of *constitutional* law applied to him (*Descamps* is statutory), nor did any new evidence prove his actual innocence of the heroin conspiracy, so he could not file a third Section 2255 claim.  But after the Fourth Circuit reinterpreted his predicate offense, he brought another motion—this time under Section 2241.  R. 1.  Since he wanted to challenge a sentence enhancement, however, he could not (yet) pass through the savings clause.  Without any contrary published precedent in sight, this Court held that Hill's sentencing claim "does not belong in a § 2241 proceeding" and dismissed his petition at the screening stage.  R. 7 at 4.

His boat stranded, Hill appealed.  At which point the Sixth Circuit gave him a tow, holding that petitioners barred from bringing successive motions under Section 2255 may sometimes challenge their sentence enhancements under Section 2241 via the savings clause.

*See Hill*, 836 F.3d at 599–600.  The court did not require Hill to prove his actual innocence under the old savings-clause test.  Instead, it adopted a new test for prisoners who challenge "the legality of [their] detention" by attacking their mandatory sentence enhancements.  28 U.S.C. § 2255(e).  To pass *this* test, the prisoner must show that (1) a new interpretation of a statute, (2) is retroactive and was issued too late to incorporate into an earlier 2255 motion, and (3) his enhanced sentence under the old interpretation is "an error sufficiently grave to be deemed a miscarriage of justice or a fundamental defect."  *Hill*, 836 F.3d at 595.

According to the Sixth Circuit, Hill passes this test.  The government conceded that, in the hindsight of *Descamps* and *Royal*, Hill's second-degree assault conviction is no longer a crime of violence under the career-offender guideline.  *Id.*  It also conceded that this change applies retroactively.  *Id.*  Those concessions brought Hill within view of shoreline.  *But see infra* Part II.D.  As for the defect in his sentence, the court reflected that serving a too-high sentence under mandatory guidelines "shares similarities" with serving a sentence higher than the statutory maximum.  *Id.* at 599.  "Both sentences," the court said, "are beyond what is called for by law."  *Id.*  If Hill had not qualified as a career offender, he could have been sentenced in a lower range.  *Id.*  Because his sentence thus "raises a fundamental fairness issue," Hill has passed the new test and may challenge his career-offender enhancement under Section 2241.  *Id.*

While it created a new rule, the court also limited its reach.  The rule applies only to petitioners in Hill's particular position: "prisoners who were sentenced under the mandatory guidelines regime," "who are foreclosed from filing a successive [2255] petition," and who received the career-offender enhancement because of a predicate offense that "a subsequent,

7

retroactive change in statutory interpretation by the Supreme Court reveals" is no longer a qualifying predicate offense.  *Id*. at 599–600.

### C.  Circuit split

Nevertheless, the Sixth Circuit also recognized that with this new rule—however limited—it had taken a side in a burgeoning circuit split.  Lining up with the Seventh Circuit, *see Brown*, 719 F.3d at 58, the Sixth Circuit is now squared off with (at least) the Fourth, Fifth, Ninth, and Eleventh, which apply the actual-innocence rule but do not allow sentencing-enhancement challenges to pass through the savings clause.  *See, e.g.*, *Surratt*, 797 F.3d at 249, *reh'g en banc granted* (Dec. 2, 2015); *In re Bradford*, 660 F.3d 226, 230 (5th Cir. 2011) (per curiam); *Marrero v. Ives*, 682 F.3d 1190, 1193 (9th Cir. 2012); *Gilbert v. United States*, 640 F.3d 1293, 1322−23 (11th Cir. 2011) (en banc).

Arguably, both sides look past the plain meaning of the savings clause.  That clause mentions challenges to "detention," the stuff of any 2241 claim, but not to one's sentence.  Taken on its terms, the clause simply clarifies that Section 2255's procedural limits do not foreclose a prisoner from challenging—under Section 2241—the way his jailer is executing his sentence.  To the founders, such challenges were what the Great Writ was all about.  *See, e.g.*, The Federalist No. 84, at 512 (Alexander Hamilton) (Clinton Rossiter ed., 1961) ("'[C]onfinement of the person, by secretly hurrying him to jail . . . , is a less public, a less striking, and therefore a *more dangerous engine* of arbitrary government.'  And as a remedy for this fatal evil he is everywhere peculiarly emphatical in his encomiums on the habeas-corpus act . . . ." (quoting 1 William Blackstone, Commentaries *136; 4 *id*. at *438)).  So if Section 2255 limited such challenges, it might well violate the Suspension Clause.  *See* U.S.

Const. art. I, § 9, cl. 2. The savings clause therefore means just what its title implies: It saves Section 2255 from being unconstitutional. *See Samak v. Warden*, 766 F.3d 1271, 1291 (11th Cir. 2014) (Pryor, J., concurring); *see also id*. at 1278 ("The text of the savings clause creates a rule that is both easy to understand and easy to apply. . . . [T]he savings clause allows a federal prisoner to file a petition for a writ of habeas corpus only when he attacks the execution of his sentence or when his sentencing court no longer exists.").

Of course, habeas corpus "is not now and never has been a static, narrow, formalistic remedy." *Jones v. Cunningham*, 371 U.S. 236, 243 (1963). And in the days before Congress passed Section 2255, prisoners could only challenge their sentences or convictions through habeas petitions in the districts where they were confined. Thus, one could argue that the savings clause is a portal back to the pre-2255 era, when prisoners could only get habeas relief by suing their jailers, the types of suits now governed by Section 2241.

For good reason, however, Congress has clearly channeled those types of challenges through Section 2255. Just as clearly, it chose to let prisoners bring such challenges only once, except in two narrow circumstances: when new evidence proves the prisoner innocent or the Supreme Court has changed constitutional law. *See* 28 U.S.C. § 2255(h).

Congress channeled sentencing challenges this way to solve a logistical conundrum. Before Section 2255, prisoners could only seek habeas relief in the jurisdictions where they were confined. This rule burdened the jurisdictions where the federal prisons were located: Just before Section 2255 passed, in 1948, five federal district courts were hearing sixty-three percent of all habeas cases. *See United States v. Hayman*, 342 U.S. 205, 214 n.18 (1952). These five habeas districts were often "far from the scene of the facts." *Id*. at 214. And with

the sentencing records miles away in another jurisdiction, these were not convenient forums. Congress intervened:  The "sole purpose" of Section 2255 "was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." *Id.* at 219.  Thus, to cure situations—like the one Hill finds himself in—where the jurisdiction of his confinement is ill equipped to hear his sentencing challenge, Congress created a remedy:  File it in the sentencing jurisdiction.

To be sure, the intent of the savings clause has proven ambiguous, as shown by the number of smart judges who disagree about the types of remedies that can teleport from Section 2255 to Section 2241.  And it is hard to argue that the procedural bars Congress put on Section 2255 are not restrictive; hence the impulse to expand the scope of the savings clause.  But if these provisions have become problems, they are Congress's to fix.[1]

### D.  Current posture

Judges Pryor and Easterbrook have provided compelling reasons why the savings-clause jurisprudence should be rethought.  *See Samak*, 766 F.3d at 1275 (Pryor, J., concurring); *Brown*, 719 F.3d at 596 (Easterbook, J., statement concerning Circuit Rule 40(e) circulation). But this Court must follow the law of the Sixth Circuit.  And the Sixth Circuit has held that petitioners in Hill's position may challenge their career-offender enhancements under Section 2241 through the savings clause.  Because "Hill has therefore satisfied the requirements of the savings clause," and his petition "is properly brought" under Section 2241, this Court must provide relief.  *Hill*, 836 F.3d at 600.

---

[1]  If Congress wanted to fix this problem, it could do so easily:  It would merely need to add a third clause to 28 U.S.C. § 2255(h) permitting prisoners to bring successive challenges after retroactive changes in statutory law.

## II.      Discussion

The question is:  How?  The Court has been struggling with that question since the Sixth Circuit's mandate issued.  What follows are some of the practical problems the Court faces in trying to provide Section 2255 relief under Section 2241—problems that, to be fair, could arise under any construction of the savings clause that does not comport with its plain meaning.  The Court would like the parties' input on these problems.

### A. Given that Section 2255 requires prisoners to challenge their sentences in the sentencing court, can (and should) this Court resentence Hill?

The remedy that Hill apparently deserves is resentencing.  But Congress wants that remedy to come from the sentencing court:  It has directed prisoners who wish to challenge their sentences to do so in "the court which imposed the sentence."  28 U.S.C. § 2255(a).  And statutes aside, basic comity requires a court to respect the judgment of another.  The Court cannot see how to resentence Hill without violating that principle and contravening the will of Congress.

Nor can the Court resentence Hill without running into the very sorts of problems that Congress passed Section 2255 to resolve.  Even in habeas cases, a court must consider the "ease of administ[ering]" its business as well as society's "interest in promoting the finality of judgments."  *Daniels v. United States*, 532 U.S. 374, 378 (2001).  And neither is promoted when a court, without any of the "documents necessary to evaluate claims arising from long-past proceedings in a different jurisdiction," attempts to redo those proceedings.  *Id*. at 379.  This is not the District of South Carolina.  This Court does not have that court's records or

11

knowledge. If Hill deserves to get resentenced, he deserves to get resentenced in the jurisdiction Congress intended—in this case, South Carolina.

One might argue that the Court could nevertheless resentence Hill "on paper," as it were. This is a digital age, after all, and this Court can access another's record electronically. But Hill might well desire otherwise. Sentencing today is not like it was back when judges were confined to a mandatory guidelines range. These days, sentencing involves a large amount of discretion. The sentencing court must balance "the history of characteristics of the defendant," "the need" for a sentence that "reflect[s] the seriousness of the offense," "promote[s] respect for the law," "provide[s] just punishment for the offense," "afford[s] adequate deterrence to criminal conduct," "protect[s] the public from further crimes," "provide[s] the defendant" with correctional treatment, and "avoids unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," among other things. 18 U.S.C. § 3553(a).

A court cannot balance these factors without intimate knowledge of the defendant, his case, and his codefendants. This case provides a perfect example: Hill was convicted for participating in a drug conspiracy. What sentences did his codefendants get? What thoughts led the judge to give them those sentences? How bad was Hill's conduct in relation to theirs? On an even more intangible note: What is the sentencing culture in South Carolina? What rehabilitative programs do they have available upon release? Will the supervising judge (usually the sentencing judge) require status conferences? This Court cannot answer most of those questions without a lot of digging, and even then its answer will not be as complete as the sentencing court's would be. And some of those questions this Court cannot answer at all.

12

Without knowing those answers, the Court does not see how it can craft a sentence that will be fair to Hill, to his codefendants, and to the public that the South Carolina court is responsible for protecting. *See* 18 U.S.C. §§ 3553(a) (1), (2)(C), (6).

The Court would likely create other discrepancies as well. The rule that now applies to Hill ostensibly only applies to prisoners in his unique position. *Hill*, 836 F.3d at 599–600. But how unique is that position, really? Today, the unfairness is that Hill was sentenced under a mandatory guideline for a predicate offense that, it turns out, no longer qualifies. Tomorrow, the Court might receive a petition from someone serving the same sentence, on the same facts, because the sentencing court chose to follow the guidelines even though those guidelines were by then advisory. Would that not "raise a fundamental fairness issue," too? *Hill*, 836 F.3d at 599. In 92.8% of cases involving a career offender, career status increased the guidelines range. *Quick Facts: Career Offenders*, U.S. Sentencing Comm'n (July 2016). To sentence a non-career offender to the range of a career offender, a court would have to sentence him above his guidelines range. In heroin cases—just to use Hill as an example—courts rarely do that. *Quick Facts: Heroin Trafficking Offenses*, U.S. Sentencing Comm'n (2016). Even in this post-*Booker* world, therefore, the reality is that qualifying as a career offender usually increases one's sentence.

Moreover, tomorrow's petitioner might not benefit from the new rule announced in this case. So he will still have to prove what today's does not—that he is actually innocent. Not to mention the petitioners in all the other circuits where this new rule does not reach. Prisoners transfer from Kentucky to West Virginia all the time. Those lucky enough to file habeas claims

13

here will benefit from this new rule; those who file in West Virginia will not.  That seems like an "unwarranted sentence disparit[y]."  18 U.S.C. § 3553(a)(6).

The Court acknowledges the injustice of leaving people like Hill without a remedy.  But as shown above, judicial solutions often beget judicial problems.  *See* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 348 (2012) ("If judges think no further ahead than achieving justice in the dispute now at hand, the law becomes subject to personal preferences and hence shrouded in doubt.").  For the reasons above—comity, fairness, practicality, and congressional will—this Court does not seem like the one that is in the best position to resentence Hill.  At the same time, the Court understands the Sixth Circuit is its boss, the Sixth Circuit desires this Court to resentence the defendant, and the Court, of course, wants to comply.

### B.  Given that Section 2241 relief is directed at the jailer, what relief can the Court provide here?

Compliance, however, raises another issue.  Although Hill really seeks a Section 2255 remedy, he has technically filed a Section 2241 petition.  The question then becomes what kind of relief the Court can provide under Section 2241.

A court does not provide Section 2241 relief by itself.  It must order the petitioner's *jailer* to do something: let him out, relax the conditions of his confinement, that sort of thing.  After all, "habeas corpus" is simply Latin for "you may have the body," and there must be someone to *give up* the body.  A Section 2241 petition is therefore served "upon the person who holds [the petitioner] in what is alleged to be unlawful custody," and it provides relief by compelling the jailer "to release his constraint."  *Braden v. 30th Judicial Circuit Court of Ky.*,

14

410 U.S. 484, 494–95 (1973) (quoting *In re Jackson*, 15 Mich. 417, 400 (1867)).  At the end of the day, a petitioner has got to sue somebody.  And the person he is allowed to sue—his jailer—can only do so much.

Determining federal sentences is not one of those things.  Sentencing is a judge's job.  *See Mistretta v. United States*, 488 U.S. 361, 364 (1989) ("Congress [has] delegated almost unfettered discretion *to the sentencing judge* to determine what the sentence should be." (emphasis added)).  By its very nature Section 2241 appears to be the wrong vehicle for such resentencing.  Rather than giving his jailer orders to execute on the spot, the Court would give *Hill* a new judgment to carry with him wherever he goes.  That is not a writ that acts "upon" the jailer, as a writ must.  *Braden*, 410 U.S. at 495.  It is instead the type of relief that Congress has channeled through Section 2255.

Speaking of the warden, he brings a few other problems to mind.  Though named in this suit, Sepanek is no longer Hill's warden:  Hill has been transferred to FCI McDowell in Welch, West Virginia.  Courts have held that jurisdiction over 2241 claims survives a prison transfer.  *See, e.g.*, *Bishop v. Med. Superintendent of Ionia State Hosp. of State of Mich.*, 377 F.2d 467, 468 (6th Cir. 1967).  In cases like *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the Supreme Court has said that when a petitioner changes prisons, the court where she was previously confined "retains jurisdiction [over her 2241 petition] and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."  *Id.* at 441.  So the Court has jurisdiction, but does it have someone "within its jurisdiction who has legal authority" to give Hill his remedy?  Can this Court order Hill's new warden to do anything, or the entire BOP?  If it can, will they have to listen?

15

Though none might seem completely satisfying, there are three potential resolutions to this jurisdictional problem. First, the executive could simply transfer Hill back to a prison in eastern Kentucky of its own volition. That would solve the problem of trying to provide long-distance relief, but at the expense of all the problems discussed earlier—those that the non-sentencing court mires itself in when trying to resentence someone from another jurisdiction.

Second, the Court could attempt to use its equitable powers to order Hill back here. Under Federal Rule of Appellate Procedure 23, once a prisoner has filed a habeas petition, the government "must not transfer" him from the jurisdiction where he awaits relief. Fed. R. App. P. 23(a). If the government wants to transfer him, it must get court approval first. *Id.* As the Sixth Circuit has pointed out, the government violated this rule when it transferred Hill to West Virginia without judicial authorization. *See* R. 14. Courts have held that judges can remedy such violations by ordering the prisoner returned—if the prisoner can show that "the change in custody prejudices [his] ability to prosecute his pending claims." *Chapman v. Mairoanna*, 521 F. App'x 44, 47 (3d Cir. 2013); *see also Hammer v. Meachum*, 691 F.2d 958, 961 (10th Cir. 1982); *Goodman v. Keohane*, 663 F.2d 1044, 1047–48 (11th Cir. 1981).

But judges rarely avail themselves of this power—they do not need to, given that the *Padilla* rule enables courts to retain jurisdiction over habeas petitions no matter where the petitioner gets sent. Thus, there are few examples to support granting this type of relief. Moreover, this solution has constitutionally dubious origins. If "prison officials have discretion to transfer [prisoners] for whatever reason or for no reason at all," then it is unclear how a court can undo a transfer without encroaching on an executive prerogative. *Meachum v. Fano*, 427 U.S. 215, 228 (1976); *see* The Federalist No. 47, at 326 (James Madison) (Jacob

16

E. Cooke, ed. 1961) ("The judges can exercise no executive prerogative, though they are shoots from the executive stock; nor any legislative function, though they may be advised with by the legislative councils.").

And third, rather than send orders into a void, the Court could simply vacate Hill's sentence—through a writ under Section 2241—pending a resentencing. *See, e.g.*, *Pickett v. Carvajal*, Civil No. 5:11CV17, 2011 WL 4592380 (E.D. Tex. 2011) (vacating an Eastern District of North Carolina conviction and "remanding" to that court for resentencing). But what kind of practical problems does that create? If this Court cannot do the resentencing itself, who will? This Court cannot compel another court to do so. And if possible, the Court would like to avoid leaving on another court's doorstep a case that the court was not expecting to receive and, ultimately, that it need not accept. Courts must respect their neighbors, and neighborly disputes can lead to awkward standstills—leaving the unfortunate petitioner stuck in limbo. *See, e.g.*, *United States v. Brye*, 935 F. Supp. 2d 1294, 1295 (M.D. Fla. 2013) ("After careful and thoughtful reflection on this unique scenario involving a district judge of one district ordering a district judge of a different district to alter and amend a sentencing order, the Court respectfully declines to follow the directive of its coequal colleague in the Southern District of Georgia and will not resentence [the] Defendant.").

To be fair, these jurisdictional problems go to the heart of the habeas structure; they are not unique to this case; and nobody in this case seems to have broached them with the Sixth Circuit. Still, this is yet another practical problem that arises when courts, rather than Congress, rework the laws. *Cf. Dodd v. United States,* 545 U.S. 353, 359 (2005) ("Although

17

we recognize the potential for harsh results in some cases, we are not free to rewrite the statute that Congress has enacted.").

### C.  Where can the Court send Hill to get his relief?

Other circuits are gearing up to reconsider the meaning of the savings clause en banc. *See McCarthan v. Warden*, No. 12-14989, 2016 WL 3878151 (11th Cir. May 24, 2016); *Surratt*, 797 F.3d at 249, *reh'g en banc granted* (4th Cir. Dec. 2, 2015).  Hopefully, courts will mind the difficulties that district courts face in providing Section 2255 relief under Section 2241.

For now, Hill's best option looks like having this case transferred to the District of South Carolina for resentencing.  Transferring would certainly serve "the interest of justice." 28 U.S.C. § 1404(a).  But the Court can only transfer the case "to any other district or division *where it might have been brought*" initially.  *Id.* (emphasis added); *see id.* § 1406(a) (same); *id.* § 1631 (same).  And since Hill was not confined in South Carolina when he filed his petition, he could not have filed it there.  Because he was confined in Kentucky at the time, he had to file it here.  In the end, then, Hill has secured the right to ask a court to fix his defective sentence under Section 2241, but he is still stuck before a court without the best tools for the job.

Granted, the wrinkle here is that Hill really needs a 2255-type remedy, although he seeks it under Section 2241.  Theoretically, at least, his petition "might have been brought" under Section 2255, in which case he might have brought it in the District of South Carolina. 28 U.S.C. § 1404(a).  Since the Sixth Circuit now permits petitioners to challenge their sentence enhancements under Section 2241, an argument could be made that Hill's petition is

18

really a 2255 motion—or at least some sort of hybrid motion—and therefore is transferrable. As they mull over the other quandaries noted above, the Court would appreciate the parties' thoughts on whether this argument, which could be made, is one worth making.  The Court would also like to know whether the parties would consent to moving this case out east; if so, the Court could transfer this petition to the District of South Carolina. *See id.*  (permitting courts to transfer actions "to any district or division to which all parties have consented").[2]

### D. Did the Supreme Court announce a new rule in *Descamps* and which branch of government gets to make that determination?

Aside from *who* can give Hill a remedy, the question remains whether it would be proper for this Court (at this time) to give him that remedy.  To pass the new savings-clause test, Hill must show that *Descamps* is a new rule (one that "could not have been invoked in [his] initial § 2255 motion") and applies "retroactive[ly]."  *Hill*, 836 F.3d at 595.  On appeal, the government conceded that *Descamps* is both new and retroactive.  *Id.*  But the courts, including the Sixth Circuit, have said that *Descamps* is actually an old rule.  *See United States v. Davis*, 751 F.3d 769, 775 (6th Cir. 2014) ("The Supreme Court in *Descamps* explained that it was not announcing a new rule, but was simply reaffirming an existing approach."); *Mays v. United States*, 817 F.3d 728, 734 (11th Cir. 2016) ("As the Supreme Court and other circuits have recognized, *Descamps* did not announce a new rule—its holding merely clarified existing

---

[2]  The Court acknowledges that the benefits of a transfer are unclear as well.  As discussed, the Fourth Circuit—where the District of South Carolina sits—does not currently permit habeas petitioners to challenge sentence enhancements under Section 2241.  By transferring, the Court might simply send Hill to have his petition denied somewhere else. *Cf. Brye*, 935 F. Supp. 2d 1294 (declining to resentence a defendant sent from another court when the receiving court's view of the law did not permit the remedy).  But without question, that district court (and judge) are more equipped to sentence Hill than this one—indeed even the lawyers familiar with the case are there.

precedent."); *Ezell v. United States,* 778 F.3d 762, 763 (9th Cir. 2015) ("We hold that the Supreme Court did not announce a new rule of constitutional law in *Descamps*. Rather, it clarified—as a matter of statutory interpretation—application of the ACCA in light of existing precedent."). Indeed, in *Descamps* itself the Supreme Court never wrote that it was creating a new rule—let alone a retroactive one. *See Descamps*, 133 S.Ct. at 2283 ("Our caselaw explaining the categorical approach and its 'modified' counterpart all but resolves this case."); *id.* at 2285 ("That is the job, as we have always understood it, of the modified approach[.]").

Thus, Hill appears to have another hurdle to overcome. The Sixth Circuit instructs this Court to resentence Hill as if *Descamps* were both new and retroactive. *Hill*, 836 F.3d at 596. But the Sixth Circuit has other published precedent. That precedent says *Descamps* is not new. *See Davis*, 751 F.3d at 775. And the Sixth Circuit has said that a later panel cannot overrule an older one. *Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting *en banc* overrules the prior decision.").

But wait—the government has conceded that *Descamps* is new. Does that concession overcome published precedent? The answer would seem to be: of course not. Chief Justice Marshall did not write that "[i]t is emphatically the province and duty of the [executive] to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). He wrote the "judicial department." *Id.* The courts have not said that *Descamps* is a new rule. Indeed, the Supreme Court itself said its existing caselaw "all but resolved" the issue; in other words, the

20

rule was not "new." *Descamps*, 133 S.Ct. at 2283.  Even though the Sixth Circuit accepted the government's concession that *Descamps* is new and retroactive, that concession does not change what the Supreme Court said.  This is one more thorny issue on which the Court would appreciate the parties' insight:  Does Hill's claim in fact entitle him to relief under the savings clause as the Sixth Circuit now interprets it?

### III.    Conclusion

Before trying to answer the questions posed above, the Court would welcome the parties' thoughts.  To reiterate, the questions include:

- Given that Section 2255 requires prisoners to challenge their sentences in the sentencing court, should this Court be the one to resentence Hill?

- Given that Section 2241 relief is directed at the jailer, what relief can the Court provide here?

- Would the parties consent to a transfer back to Hill's sentencing judge?

- Did *Descamps* enunciate a "new rule"?  Does the judicial or executive branch get to make that determination?  What is this Court to do with the Sixth Circuit's opinion in *Davis* and the Supreme Court's reasoning in *Descamps*?

Accordingly, it is **ORDERED** that a telephone conference is **SCHEDULED** for **January 12, 2017** at **10:30 a.m.**  During the conference, the Court would like to discuss the above issues and schedule any necessary briefing.

A court reporter is needed and will be provided by the Court.  The parties must **DIAL IN** to this conference call five minutes before the scheduled time by following these steps:

(a)    Call AT&T Teleconferencing at 1-877-873-8017;

(b)     Enter access code 8284218 (followed by "#"); and

(c)     When requested, enter the security code, 1234 (followed by "#").

This the 6th day of January 6, 2017.

**Signed By:**

**_Amul R. Thapar_**  AT

**United States District Judge**